Argued and submitted August 18, affirmed on petition and on cross-petition
October 5, 1994

1000 FRIENDS OF OREGON,
*Respondent,*

*v.*

CITY OF NORTH PLAINS,
*Petitioner - Cross-Respondent.*

(LUBA 93-154)

OREGON DEPARTMENT OF LAND
CONSERVATION AND DEVELOPMENT,
*Respondent - Cross-Petitioner,*

*v.*

CITY OF NORTH PLAINS,
*Petitioner - Cross-Respondent.*

(LUBA 93-159)

OREGON DEPARTMENT OF TRANSPORTATION,
*Respondent - Cross-Petitioner,*

*v.*

CITY OF NORTH PLAINS,
*Petitioner - Cross-Respondent.*

(LUBA 93-160; CA A84856)

882 P2d 1130

Pamela J. Beery argued the cause for petitioner - cross-respondent. With her on the briefs were James M. Coleman, Ty K. Wyman and O'Donnell Ramis Crew Corrigan & Bachrach.

Mary Kyle McCurdy argued the cause and filed the brief for respondent.

John T. Bagg, Assistant Attorney General, argued the cause for respondents - cross-petitioners. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Lawrence S. Shaw filed a brief *amicus curiae* for Metropolitan Service District.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

In these consolidated appeals, LUBA remanded the city of North Plains' amendment to its urban growth boundary (UGB) and certain related decisions by which the city would have added 306 acres, consisting primarily of farmland, to its present 418-acre UGB. LUBA agreed with virtually all of the arguments that the various petitioners before it advanced to challenge the city's actions. However, LUBA rejected the Department of Land Conservation and Development's (DLCD) and Department of Transportation's (ODOT) contentions that OAR 660-12-060(4) was applicable to the city's amendment of its UGB and that the city's decision violated that rule. The city petitions and DLCD and ODOT cross-petition for our review. We affirm on the petition and on the cross-petition.

With respect to the petition, we adopt LUBA's discussion and disposition of the city's arguments and do not believe further discussion is necessary. We turn to the cross-petition. The rule at issue, OAR 660-12-060(4), provides:

"The presence of a transportation facility or improvement shall not be a basis for an exception to allow residential, commercial, institutional or industrial development on rural lands under this division [OAR 660-12] or OAR 660-04-022 and OAR 660-04-028."

OAR 660-04-010 pertains generally to when exceptions to various statewide planning goals are permissible or required. Under subsection (1)(c) of that rule, the "exceptions process is generally applicable" to certain goals, including:

"(c) Goal 14 'Urbanization' except as provided for in paragraphs (1)(c)(A) and (B) of this rule, and OAR 660-14-000 through 660-14-040:

"(A) An exception is not required to an applicable goal(s) for the establishment of an urban growth boundary around or including portions of an incorporated city when resource lands are included within that boundary. Adequate findings on the seven Goal 14 factors, accompanied by an explanation of how they were considered and applied during boundary establishment, provide the same information as required by the exceptions process findings.

"(B) When a local government changes an established urban growth boundary it shall follow the procedures and requirements set forth in Goal 2 'Land Use Planning', Part II, Exceptions. An established urban growth boundary is one which has been acknowledged by the Commission under ORS 197.251. Revised findings and reasons in support of an amendment to an established urban growth boundary shall demonstrate compliance with the seven factors of Goal 14 and demonstrate that the following standards are met:

"(i) Reasons justify why the state policy embodied in the applicable goals should not apply (This factor can be satisfied by compliance with the seven factors of Goal 14);

"(ii) Areas which do not require a new exception cannot reasonably accommodate the use;

"(iii) The long-term environmental, economic, social and energy consequences resulting from the use at the proposed site with measures designed to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(iv) The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

Thus, an exception as defined in section (1)(c)(B) is required when a UGB is amended.

In justifying the amendment to its UGB, the city relied, *inter alia*, on the proximity to certain highways and roads of the rural area that its amendment would add to the UGB. DLCD and ODOT contended to LUBA that the city was required "to justify its [UGB] amendment through application of exceptions criteria" and, at least for the types of eventual urban development that the city planned for the added territory, OAR 660-12-060(4) precluded it from justifying an exception on the basis of the proximity of the roads. In sum, the cross-petitioners argue that OAR 660-12-060(4) was applicable to the city's decision and that the city did not apply it or comply with it.

LUBA explained its rejection of that argument:

"OAR 660-12-060(4) prohibits using the existence of transportation facilities as a basis for approving certain kinds of exceptions. This would appear to mean OAR

660-12-060(4) prohibits justifying certain exceptions to allow particular uses on the basis of actual or proposed transportation facilities being near the exception area, or justifying certain exceptions on the basis that the area is located away from such transportation facilities.

"We have never interpreted the scope or meaning of OAR 660-12-060(4). However, we believe it is relatively clear that OAR 660-12-060(4) applies to (1) exceptions to the requirements of OAR 660-12-065 adopted under ORS 660-12-070, and (2) exceptions to statewide planning goals adopted under OAR 660-04-022 (reasons exceptions) or OAR 660-04-028 (committed exceptions). The challenged decision, on the other hand, approves an exception for a change to an established UGB under OAR 660-04-010. OAR 660-12-060(4) does not list exceptions adopted under OAR 660-04-010 as being within its prohibition against the consideration of transportation facilities. We conclude the exception approved in the challenged decision is not within the scope of OAR 660-12-060(4) and, therefore, that rule is not applicable to the challenged decision."

DLCD and ODOT argue that LUBA erred in that conclusion. They agree that OAR 660-12-060(4) does not specifically mention exceptions for UGB amendments taken under OAR 660-04-010(1)(c), as it does other kinds of exceptions. The cross-petitioners argue, however, that the requirement in OAR 660-04-010 that

"an exception be taken as part of any UGB amendment necessarily incorporates the provisions of OAR 66[0]-04-022 and 028. That is, the requirement that an exception be part of any amendment to a UGB means that all applicable exception criteria be applied. But for the prohibition in OAR 660-12-060(4), both provisions governing 'reasons' exceptions and those governing exceptions based on the fact land may be committed to other uses may be applicable to a highway. That is, the highway may form a convenient reason to place intensive land uses around it; and it may also, as an example of land committed to another use, justify a claim the area is already committed to other than rural use.

"Because OAR 660-12-060(4) prohibits using a transportation facility to justify an exception under either OAR 660-04-022 or 028, the rule prohibits using a transportation facility to justify *any* exception taken as part of a UGB amendment approval. LUBA's reading of the rule permits a local government to justify an amendment to a UGB with a

roadway when the roadway could not be used in aid of any other exception application. This result is inconsistent and makes no sense.

"* * * * *

"While not immediately obvious from the choice of words in OAR 660-12-060(4), the rule should be regarded as applicable to amendments to urban growth boundary changes." (Emphasis in original; footnote omitted.)

Although the policy and planning aspects of DLCD's and ODOT's argument may be persuasive, *our* initial — and perhaps ultimate — consideration must be the "words in OAR 660-12-060(4)" and in the other rules that are involved. The rules cannot in effect be amended, in the guise of interpreting them, to insert arguably salutary policies that their authors did not include in them. ORS 174.010; *1000 Friends of Oregon v. Wasco County Court*, 299 Or 344, 703 P2d 207 (1985). LUBA is correct that OAR 660-12-060(4) applies *in terms* only to specific exceptions based on three identified rules, or groups of rules, and that the rule pertaining to exceptions in conjunction with UGB amendments is not among the three.

DLCD's and ODOT's argument depends on the premise that two of the identified rules, OAR 660-04-022 and 028, are necessarily, if implicitly, encompassed by the exceptions that are required for UGB amendments by OAR 660-04-010(1)(c)(B). We do not agree with that premise. OAR 660-04-010(1)(c)(B) requires that a UGB amendment be supported by a showing of compliance with the Goal 14 factors and by the four additional showings defined in OAR 660-04-010(1)(c)(B)(i)-(iv). The first of the four corresponds facially to the "reasons" exceptions that are governed by OAR 660-04-022. *See* OAR 660-04-022(1). However, OAR 660-04-010(1)(c)(B)(i) differs from OAR 660-04-022 in a very material respect: It makes "compliance with the seven factors of Goal 14" an independent means of — or alternative to — justifying a reasons exception under OAR 660-04-022. Consequently, the UGB amendment exception rule does not replicate or incorporate the reasons exception rule. It establishes a separate standard of compliance that obviates the need for a reasons exception. The nexus between OAR 660-04-010(1)(c)(B) and the commitment exceptions rule,

OAR 660-04-028, is even less apparent. As we read the two provisions, there is no significant relationship between them.

DLCD and ODOT come close to acknowledging as much, but they nevertheless argue:

> "It may be noted OAR 660-04-010(1)(c)(B) does not address the kind of exception to be used. Its inclusion of criteria in subparagraphs (i) through (iv) suggests these criteria are to be used instead of the exception criteria found in OAR 660-04-022 or 028. This view may result in an exception based on an incomplete analysis. As OAR 660-04-000 et seq implements Goal 2 exception standards with mandatory criteria, all arguably applicable portions of the exceptions rule are applicable."

We draw the opposite conclusion. The multiplicity of rules pertaining to exceptions of different kinds, coupled with the detail that many of them contain concerning when, where and how they apply, does not support the proposition that virtually all of the rules were intended to apply to virtually every exception. OAR 660-12-060(4) specifies the types of exceptions to which it applies. OAR 660-04-010(1)(c)(B), in turn, enumerates self-contained standards pertaining to what must be demonstrated to support the required exception for a UGB amendment. Neither rule refers to the other and neither contains the same criteria for exceptions that the other contains. Nothing in DLCD's and ODOT's argument persuades us that the two rules were meant to be read other than literally, or that either their text or context allows the overlapping application that the cross-petition claims the two rules should have. We agree with LUBA that OAR 660-12-060(4) does not apply here.

Affirmed on petition and on cross-petition.